UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BRYON TAYLOR,** | : | **Case No. 4:06-CV-1285 (4:03-CR-422)** |
| Petitioner, | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| **UNITED STATES OF AMERICA,** | : | **MEMORANDUM & ORDER** |
| Respondent. | : | |

Before the Court is *pro se* Petitioner Bryon Taylor's ("Taylor") *Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody* (Doc. 62).[1] Taylor's § 2255 motion raises two grounds for relief related to his sentence: (1) that the Court failed to afford him the benefit of a reduction to which he was entitled under United States Sentencing Guideline § 3E1.1(a) for acceptance of responsibility and (2) that his counsel was ineffective for failing to raise the same reduction at sentencing. (*Id*. at 4.) For the reasons articulated below, Taylor's § 2255 motion is **DENIED** and his case, therefore, is **DISMISSED**.

I.     **BACKGROUND**

Taylor's § 2255 motion challenges the sentence imposed in Case No. 4:03-CR-442. The relevant history of that case is as follows.

---

[1] All document references ("Doc.") are to the docket in the corresponding federal criminal action, Case No. 4:03-CR-442, unless otherwise noted. Taylor's § 2255 motion is naturally Doc. 1 of this civil action, Case No. 4:06-CV-1285.

**A.     FACTS UNDERLYING THE INDICTMENT[2]**

On or about September 21, 2003, the Youngstown, Ohio Police Department ("YPD") was investigating the homicide of Jefferson Smith. Officers were dispatched to Smith's home, 743 Parkview Avenue, where his body was found. In the course of their investigation, the YPD Officers discovered cocaine on the premises. After several days of investigation, the YPD suspected that Taylor had been at Smith's home on September 21. On September 26, 2003, the YPD interviewed Taylor at their offices regarding his whereabouts on September 21. The Officers told Taylor that Larry Craft had admitted that he and Taylor were at Smith's home on September 21 cooking crack cocaine. Taylor confirmed Craft's representations, denied any involvement in Smith's murder, but admitted that he and Craft had cooked cocaine at Smith's home on September 21.

**B.     INDICTMENT**

On November 13, 2003, a federal grand jury returned a single-count indictment charging Taylor with conspiracy to distribute, and possession with intent to distribute, in excess of 50 grams of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Doc. 1.) The charge in the indictment arises from Taylor's alleged conduct at Jefferson Smith's house on or about September 21, 2002, before Smith's murder.

Taylor was arraigned on the indictment on December 4, 2003, and entered a plea of not guilty. (Doc. 8.)

**C.     MOTION TO SUPPRESS**

On February 6, 2004, Taylor filed a motion to suppress any and all statements he allegedly made to the YPD on September 26, 2002. (Doc. 14.) The Court conducted a suppression hearing

---

[2] These facts are taken from paragraph 20 of the signed Plea Agreement (Doc. 50). Taylor specifically initialed that particular paragraph. (*Id.*)

on February 23, 2004 (Doc. 21), and denied Taylor's motion to suppress on March 3, 2004 (Doc. 25).

In its Order denying the motion to suppress, the Court noted that Taylor testified at the hearing that he did not cook crack at Smith's house on September 21 and denied that he ever admitted to having done so. (*Id*. at 5-6.) The Court made specific note of this testimony and chose not to credit it, finding the police officers' testimony to the contrary regarding Taylor's confession more credible on multiple grounds.

### D. COUNSEL

Taylor was initially represented by retained counsel, Attorney Walter T. Madison and, after Taylor requested, and the Court granted, continuances related to pre-trial motions, trial was set for April 19, 2004. On April 14, 2004, Madison appeared for what was to have been a final pre-trial conference. Taylor, however, asked for new counsel and a continuance of the upcoming trial. The Court granted Taylor's oral motion to appoint substitute counsel and found that the ends of justice necessitated the continuance Taylor requested. (Doc. 38.) The Court appointed Attorney Jerome A. Milano to represent Taylor on April 15, 2004. Attorney Milano represented Taylor for the remainder of his criminal case.

### E. GUILTY PLEA

After appointing substitute counsel, the Court re-set Taylor's trial for June 15, 2004. (Doc. 41.) On the eve of the re-scheduled trial, June 14, 2004, Taylor entered into a plea agreement with the Respondent United States of America ("Government"). (Doc. 50, Plea Agreement.) In the Plea Agreement, the Government agreed to only recommend a two-level sentence reduction for acceptance of responsibility, rather than a full three levels as it could have given Taylor's offense

level. (*Id*. ¶¶ 8, 15.) The Government took this position because Taylor had delayed so long in entering a plea. On the same day, Taylor withdrew his not guilty plea and entered a plea of guilty to the single-count indictment. (Doc. 51.) The Court accepted Taylor's guilty plea. (*Id*.)

### F. SENTENCING

A sentencing hearing was held on April 27, 2005. (Doc. 58.) The Court sentenced Taylor to a prison term of 151 months, to run concurrent with his sentence in Case No. 4:03-CR-227 (N.D. Ohio), and five years of supervised release. (*Id*.) The Court entered the Judgement on May 10, 2005. (Doc. 60.)

It is undisputed that, at the sentencing hearing, neither Taylor nor his attorney, Milano, argued that he was entitled to the reduction in sentence pursuant to U.S.S.G. § 3E1.1(b)(1) that he now asserts as the basis for his § 2255 petition. In fact, the Court had the following exchange with the Government's counsel at the sentencing hearing:

> THE COURT: Okay. So let's take a look at the Guideline calculations. . . .
>
> . . .
>
> THE COURT: At a Level 34, then, the issue of acceptance of responsibility comes in. The defendant is afforded two levels for acceptance of responsibility. Is there a reason that the Government – you are going to have to remind me, it has been a long time, I do remember very vividly Mr. Taylor's testimony, but what was the Government's rationale for not moving for the third level?
>
> MS. BARR: The defendant pled either the morning of trial or prior to trial, and we had prepared for trial at this point, and we explained that to him prior to entering into the plea agreement. We did not move for the third point. We did not think it was . . . appropriate.

(Doc 61 at 15-16, Sentencing Hr'g Tr. 15-16.)

Taylor did not appeal his sentence. Under the terms of the Plea Agreement, Taylor waived his right to appeal a sentence consistent with the terms of the Plea Agreement. (Doc. 50 ¶ 17.)

### G. PENDING MOTION

On May 24, 2006, Taylor filed the motion now pending before this Court moving to vacate, correct, or set aside his sentence under 28 U.S.C. § 2255. (Doc. 62; Doc. 1, Case No. 4:06-CV-1285.) The next day, the Court Ordered the Government to respond within thirty days (Doc. 3), and the Government did so on June 15, 2006 (Doc. 4). Taylor filed a Traverse on July 10, 2006. (Doc. 5.) Consequently, this petition is ripe for adjudication.

## II. DISCUSSION

### A. STANDARD OF REVIEW FOR A MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE UNDER 28 U.S.C. § 2255

Section 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

A petitioner seeking relief under § 2255 must allege that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *see also Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999) ("[The petitioner] must show a fundamental defect in his sentencing which necessarily results in a complete miscarriage of justice or an egregious error

violative of due process."). The petitioner has the burden of sustaining his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964; *see also McQueen v. United States*, 58 Fed. Appx. 73, 76 (6th Cir. 2003) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.") (citation omitted).

### B. AN EVIDENTIARY HEARING IS NOT REQUIRED

Under Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a court first must determine whether an evidentiary hearing is required after a review of the answer and the records of the case. If the motion, the answer, and the records of the case show conclusively that a petitioner is not entitled to relief under 28 U.S.C. § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

Here, Taylor argues that a hearing is necessary for the Court to determine the degree to which he recanted his initial confession and to evaluate his ineffective assistance of counsel claim. Specifically, he contends that he has not had access to the transcripts of the suppression hearing and, therefore, has not had an opportunity to challenge the Government's contention that his testimony at that hearing was inconsistent with his initial confession to the YPD on September 26, 2003. (Docs. 5 at 6.) In addition, he argues that the record does not address the reasons his counsel did not raise U.S.S.G. § 3E1.1(b)(1) at sentencing, and that this evidence is necessary to resolve Taylor's claims. (Doc. 5 at 9-10.)

The Court finds that an evidentiary hearing is not required, however, as a thorough review of the record conclusively shows that Taylor is not entitled to relief under § 2255 for the reasons more fully articulated below.

### C. THE PARTIES' ARGUMENTS

#### 1. Taylor's Arguments in Support of His Two Grounds for Relief

Taylor presents two arguments in his § 2255 petition. First, he argues that the Court erred in failing to afford him the benefit of a three level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(1). Second, he argues that his counsel, Attorney Milano was ineffective because he failed to raise § 3E1.1(b)(1).

In support of his first ground for relief, Taylor argues that his initial confession to the YPD on September 26, 2003 satisfies the requirements of § 3E1.1(b)(1) because it indicates timely acceptance of responsibility. Although the Government points out that Taylor testified at the suppression hearing that he never admitted to the YPD that he was cooking crack at Smith's house on September 21, 2003, Taylor contends that he was merely denying the act of cooking the crack, as distinct from being involved with those who did so, a detail concerning his role in the conspiracy that does not undermine his confession as it relates to the elements of the offense charged in the indictment. In addition, he cites Ninth Circuit authority for the proposition that recanting a confession is irrelevant for § 3E1.1(b)(1) purposes. (*See* Doc. 1 at 13 (citing *United States v. Blanco-Gallegos*, 188 F.3d 1072, 1076 (9th Cir. 1999).) He notes, however, that he could not locate Sixth Circuit authority addressing this issue because of the prison library's incomplete holdings. (*Id*. at 14.)

With respect to his second ground for relief, Taylor argues that Attorney Milano was constitutionally ineffective for failing to raise U.S.S.G. § 3E1.1(b)(1) at sentencing. Taylor argues that Milano failed to raise a meritorious claim – *i.e.*, his § 3E1.1(b)(1) argument -- and that this shortcoming prejudiced Taylor by subjecting him to a higher sentence (Doc. 1 at 12-13), or, at least,

that prejudice cannot be determined without an evidentiary hearing (Doc. 5 at 9-10). Taylor accurately cites *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny for the applicable standard for an ineffective assistance of counsel claim.

As such, Taylor's second argument is fundamentally premised upon his first; if he cannot establish at least a plausible entitlement to a sentencing reduction pursuant to § 3E1.1(b)(1), then his ineffective assistance of counsel claim fails at the outset.

### 2. The Government's Arguments in Response

The Government combines the analysis of Taylor's grounds for relief into a single argument under the *Strickland* test. That is, the Government argues that Attorney Milano's performance was neither objectively unreasonable nor prejudicial because Taylor was not entitled to the benefit of § 3E1.1(b)(1) under applicable Sixth Circuit authority. (Doc. 4 at 4.) Specifically, the Government quotes *United States v. Robertson*, 260 F.3d 500, 507 (6th Cir. 2001) for the proposition that Taylor's testimony at the suppression hearing precludes him from taking advantage of § 3E1.1(b)(1).

> [T]he additional one-point reduction for acceptance of responsibility [under Section 3E1.1(b)(1)] may only be precluded if the defendant recants or casts doubt on the accuracy of his original timely confession during . . . suppression proceedings, for under these circumstances the defendant will no longer have provided the government with "complete information" concerning his involvement in the offense.

(Doc. 4 at 7-8 (quoting *Robertson*).) The Government argues that Taylor recanted his earlier confession at the suppression hearing and falls squarely within the category of defendants described in *Robertson*. The Government contends, therefore, that Taylor's counsel was not ineffective for failing to raise a non-meritorious argument.

### D. ANALYSIS

The Government is correct: Taylor is not entitled to the relief he seeks because his testimony

at the suppression hearing at least casts doubt upon the accuracy of his original confession. This conclusion follows from the standards applicable to § 3E1.1(b)(1) and the *Strickland* test.

### 1. U.S.S.G. § 3E1.1(b)(1)

Section 3E1.1 of the United States Sentencing Guidelines relates to acceptance of responsibility. In its entirety, the version of U.S.S.G. § 3E1.1 applicable at the time of Taylor's sentencing[3] provides:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
>
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:  **(1) timely providing complete information to the government concerning his own involvement in the offense;** or (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease by 1 additional level.

U.S.S.G. § 3E1.1 (2002) (emphasis added).

Section 3E1.1(b) of the U.S.S.G. is the provision of the U.S.S.G. relevant to the motion at bar. In appropriate circumstances, § 3E1.1(b) can provide the defendant with a one-point reduction to the applicable offense level in addition to the standard two-level reduction for acceptance of responsibility pursuant to § 3E1.1(a). *See Robertson*, 260 F.3d at 506. Because it affords the defendant an additional reduction under certain more limited circumstances than § 3E1.1(a), §

---

[3] The Court applied the 2002 version of the U.S.S.G. at Taylor's sentencing because the crimes to which he plead guilty were committed in 2002. *See United States v. Duane*, 533 F.3d 441, 445-447 (6th Cir. 2008) (retroactive application of amended sentencing guideline could violate *Ex Post Facto* Clause); *United States v. Harmon*, 409 F.3d 701, 706 (6th Cir. 2005) (holding that the version of U.S.S.G. in force at the time of sentencing is applicable unless it potentially subjects the defendant to a stiffer sentence than the version applicable at the time of the offense).

3E1.1(b) is often referred to as "super acceptance." *Id*. at 507. The Court <u>must</u> award the super acceptance point if the defendant proves, by a preponderance of the evidence, all of the elements of <u>either</u> § 3E1.1(b)(1) or (2). *Id*. In other words, the elements of a mandatory award of the super acceptance point are as follows:

- the offense level is 16 or higher;
- the defendant qualifies for the two level reduction contemplated by § 3E1.1(a);
- the defendant has assisted in the investigation or prosecution of his own case in <u>one</u> of the following two ways:
  (1) timely providing complete information to the government; <u>or</u>
  (2) timely notifying the government of his intention to enter a guilty plea.

U.S.S.G. § 3E1.1(b).

The only element of § 3E1.1(b) at issue for purposes of the motion presently before the Court is whether Taylor timely provided the government with complete information regarding the his own misconduct.[4] In *Robertson*, the Sixth Circuit addressed the definition of "complete information" under § 3E1.1(b)(1) by explaining that a defendant who "recants or casts doubt on the accuracy of his original timely confession during the course of suppression proceedings [has not] provided the government with 'complete information' concerning his involvement in the offense." 260 F.3d at 506. Therefore, the issue before the Court with respect to § 3E1.1(b) is whether Taylor's testimony at the suppression hearing cast doubt on the accuracy of his September 26, 2006 confession.[5]

At the suppression hearing, Taylor testified that he did <u>not</u> admit to the YPD or the DEA that

---

[4] It is undisputed that Taylor's initial offense level exceeded 16 and that he received the two-point reduction pursuant to § 3E1.1(a). It is beyond dispute, moreover, that Taylor did not timely notify the Government of his intention to plead guilty: he entered his guilty plea on the eve of trial and, thus, forced the Government to prepare to try the case.

[5] The September 26, 2006 confession occurred just days after the misconduct charged in the indictment and prior to Taylor's arrest. Accordingly, Taylor's original confession was timely, and, had he never recanted or cast doubt on the veracity of his initial statements, he would be entitled to the super acceptance point.

-10-

he was cooking crack at Smith's house on September 21, 2003. In fact, he stated that he "never admitted to cooking crack nor told them I was a part of any crack." (Doc. 61 at 32, Suppression Hr'g Tr. 32, Feb. 23, 2004.) This testimony is clearly problematic for Taylor. Although the first clause of the sentence – "never admitted to cooking crack" – plausibly supports his argument that he was merely clarifying the fact that he was not the crack <u>cooker</u>, the second clause – "nor told them I was part of any crack" – casts doubt on the core aspect of his confession, *i.e.*, that he was present in Smith's house on September 21 as a player in a criminal conspiracy to distribute crack cocaine. A more extensive excerpt from Taylor's testimony on this issue demonstrates that he was attempting to undermine his prior confession.

> Q. [When you spoke to the YPD on September 26] [w]hat did you tell them you were doing at Mr. Smith's home on the 20th and 21st?
>
> A. We were supposed to have been going out and when I got there he was getting dressed and as he was getting dressed there was a young lady. They had a few words. I never saw her – they went in the front room to talk. When he went up to get dressed he said he had somebody coming over, we should leave. When they came it was later. It would take longer than it was supposed to take. He would bring his car to the shop and leave.
>
> Q. He asked you come over and cook some crack cocaine?
>
> A. Never, [Detective] Kelly told me that I cooked crack. He told me Larry Kraft [sic] came and gave a statement me and him cooked crack. I never admitted to cooking crack nor told them I was part of any crack.
>
> Q. You were not there cooking crack cocaine?
>
> A. No, ma'am.
>
> Q. Do you remember giving a proffer to the members of the Drug Enforcement Agency here recently?
>
> A. Yes.
>
> Q. Did you not admit to them that on the day of September 20th you were at Mr.

-11-

>   Smith's home cooking crack cocaine?
>
> A. No, ma'am, at one time I talked to the DEA agent Mr. Panzara. The first time they ever asked me about anything at Mr. Jefferson's houses [sic] I told them we never cooked crack and never admitted to cooking crack.

(Doc. 21 at 31-32, Suppression Hr'g Tr. 31-32.)

In light of this testimony, the Government's confidence in the accuracy of Taylor's September 26 confession was understandably shaken. Because Taylor did not enter into the Plea Agreement until the day before his trial, Taylor's testimony forced the Government to prepare for his trial with an arguably contested confession as evidence, instead of a clean confession. While the confession and suppression hearing testimony is obviously useful evidence, especially for impeachment purposes, a confession untainted by Taylor's subsequent testimony would have clearly been preferable from the Government's perspective. Similarly, Taylor was not as reliable a witness against Craft in Craft's criminal trial as a result of his testimony at the suppression hearing.

Accordingly, the Court finds that Taylor's testimony at the suppression hearing at least "cast doubt" upon the accuracy of Taylor's initial timely confession, and, therefore, he was not entitled to the super acceptance point pursuant to § 3E1.1(b)(1). *See Robertson*, 260 F.3d at 506. Taylor's first ground for relief in his § 2255 petition is therefore rejected.

### 2. The *Strickland* Test for Ineffective Assistance of Counsel

Having determined that Taylor was not entitled to the super acceptance point, the Court turns to Taylor's second ground for relief – whether Attorney Milano was ineffective because he did not raise the super acceptance argument.

An effective assistance of counsel claim involves two components. In order to prove his ineffective assistance of counsel claim, Taylor first has to demonstrate that Attorney Milano's

performance was deficient based on an objective standard of reasonableness and, second, that he was prejudiced by that deficiency. *See Avery v. Prelesnik*, 548 F.3d 434, 437 (6th Cir. 2008). "Prejudice occurs when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). If Taylor cannot satisfy one prong of the *Strickland* test, the Court need not analyze the other prong. *See Strickland*, 466 U.S. at 677, 697.

The first prong of the *Strickland* test requires the Court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (omitting citations). Whether counsel's conduct was "objectively reasonable" is determined based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690.

Under the circumstances of this case, Attorney Milano's decision not to raise U.S.S.G. § 3E1.1 was objectively reasonable. First, as discussed above, it would have been futile for Milano to argue for the super acceptance point because, in light of his testimony at the suppression hearing casting doubt upon his confession, Taylor was not entitled to it. A lawyer cannot reasonably be expected to raise every futile argument at sentencing to avoid an ineffective assistance of counsel claim. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000); *Essinger v. Jackson*, 3:05cv1716, 2007 WL 4248175, at *4 (N.D. Ohio, Nov. 30, 2007) (citing *Harris*). Second, in the Plea Agreement, the Government only agreed to request a two-point reduction in offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a); the Plea Agreement simply does not contemplate super acceptance. As a strategic matter, it was reasonable for Milano to choose not to

present arguments outside of the Plea Agreement at the sentencing hearing in order to avoid opening the door for the Government to present additional arguments in favor of a stiffer sentence. *Cf. Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (finding that "counsel's performance was not deficient because it was based upon a reasonable decision to offer a guilty plea in exchange for a lighter sentence"). In short, Milano reasonably elected to adhere to the terms of the negotiated Plea Agreement, which resulted in a significant reduction in the potential term of Taylor's custody based on the Guidelines range.[6]

Even if Taylor could satisfy the first prong of the *Strickland* test, his claim fails under the prejudice prong. Taylor's sentence would not have been different if Milano had raised U.S.S.G. § 3E1.1(b) because, for the reasons discussed above, there is no basis for awarding the super acceptance point.[7] *See Robertson*, 260 F.3d at 506.

Taylor's second ground for relief in his § 2255 petition is therefor rejected.

\* \* \*

Accordingly, in light of the foregoing, Taylor's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied with prejudice.[8]

---

[6] In addition to the Plea Agreement itself (Doc. 50), the Court discussed the terms of the Plea Agreement with Taylor at length at the change of plea hearing. (Doc. 51.)

[7] Milano, moreover, successfully argued for two additional point beyond those requested by the Government for substantial assistance. In addition to negotiating a Plea Agreement acceptable to Taylor, he presented arguments to the Court at the sentencing hearing that resulted in a reduced sentence for his client. (Doc. 61 at 17-19.) Accordingly, Milano's representation was clearly <u>effective</u>, not ineffective and prejudicial.

[8] The above analysis demonstrates that a hearing is unnecessary in this case, as the record – including the complete transcripts of the suppression and sentencing hearings -- demonstrates conclusively that Taylor is not entitled to the relief he seeks. *See Baker*, 781 F.2d at 92.

### III. CONCLUSION

For the foregoing reasons, Taylor's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 62) is **DENIED WITH PREJUDICE**. Taylor's case, therefore, is **DISMISSED**.

Moreover, the Court will not issue a certificate of appealability in this case, because Taylor has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Likewise, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

                                              */s/*Kathleen M. O'Malley
                                              **KATHLEEN McDONALD O'MALLEY**
                                              **UNITED STATES DISTRICT JUDGE**

**Dated: June 18, 2009**